Cite as 2020 Ark. App. 160

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-19-868

|  |  |
|---|---|
| JOEL GUERRERO, SR.<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered:** March 4, 2020<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72JV-18-346]<br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED |

## MIKE MURPHY, Judge

Appellant Joel Guerrero, Sr., appeals from the Washington County Circuit Court's termination of his parental rights to his child, M.W. (DOB: 04-16-2018). On appeal, Guerrero argues that the termination order was not supported by sufficient evidence. He challenges both the circuit court's statutory grounds and best-interest findings.[1] We affirm.

On April 17, 2018, the Arkansas Department of Human Services ("Department") exercised an emergency hold on M.W. and filed a petition for emergency custody and dependency-neglect after M.W. tested positive for methamphetamine at birth. The Department was further concerned for M.W.'s health and safety because the family had a pattern of fleeing by alternating between living in Arkansas and Oklahoma; the biological

---

[1]The circuit court also terminated the parental rights of M.W.'s mother, Dalesha Welch, but she is not a party to this appeal.

mother, Dalesha Welch, had her rights to a previous child terminated; and the family had an open case with the Oklahoma Department of Human Services for a third child, J.G.(1) (DOB: 03-17-2017). The circuit court entered an ex parte order of emergency custody, and upon conducting a probable-cause hearing, it found that probable cause existed for the child to remain in the Department's custody. The court also ordered DNA testing for Guerrero and M.W.

On June 8, the court adjudicated M.W. dependent-neglected based on neglect and parental unfitness. The court found Guerrero to be M.W.'s legal father and it ordered Guerrero to cooperate with the Department, keep the Department informed of his whereabouts, take a psychological evaluation, not use illegal drugs or alcohol, submit to random drug screens, obtain and maintain stable housing and employment, and demonstrate an ability to protect M.W. and keep M.W. safe from harm.

On November 14, the court entered a review order finding that Guerrero was in partial compliance with the case plan at the time. Guerrero had completed a psychological evaluation and maintained stable housing, but he had missed multiple visits with M.W., failed to complete a drug-and-alcohol assessment, failed to submit to all random drug screens, tested positive for THC at the drug screens he did submit to, not completed parenting classes, and failed to maintain weekly contact with the Department.

On April 10, 2019, the court entered a permanency-planning order. The court changed the goal of the case to adoption and termination of Guerrero's parental rights. The court noted that Guerrero had maintained stable housing and employment; however, it stated that Guerrero had only recently begun individual counseling and submitting to

2

random drug screens. Supporting the goal change to adoption and termination, the court found that

> [M.W. is] in foster care because of Mother's drug addiction, because Mother is not stable, and because Mother and Father have an unhealthy relationship. The Court finds that this unhealthy relationship is not a safe and stable situation for the children! The Court finds that Father's choices to still be in a relationship with Mother are what is keeping his children from him.

On May 9, the Department filed a petition for termination of parental rights asserting that termination was in M.W.'s best interest. It alleged that Guerrero was unfit because M.W. had been out of his custody for twelve months, and he had failed to remedy the conditions that kept M.W. from being placed in his home. It also alleged that subsequent issues arose after M.W. was removed that prevented her from being placed in his custody. A termination hearing was conducted on August 14.

Angela Brown, a Department employee who had been supervising Guerrero's visits with his children since May 2019, testified that Guerrero is a good father and that she had no concern about M.W. and J.G.(1) being around him.[2]

K.C. Oliver, the Department's caseworker, testified that M.W. is adoptable and is doing well in her foster placement. Oliver then detailed Welch's inability to maintain stability and her history of drug abuse and of relapsing. She further testified that Welch was currently in an inpatient drug-treatment facility because she was court ordered to go in her

---

[2]J.G.(1) is M.W.'s sibling and was in foster care in Oklahoma at the time of M.W.'s birth. By agreement of the court in Oklahoma and the court in Arkansas, J.G.(1)'s case was transferred to Washington County and J.G.(1) was placed in the same foster home as M.W. However, J.G.(1) is not a subject child to the present case and is the subject child of a companion case (72JV–18–966).

criminal case in Oklahoma. Oliver stated that Welch gave birth to Guerrero's son, J.G.(2), on July 27 and that the child is currently in foster care in Oklahoma.

Concerning Guerrero, Oliver testified that he had not maintained weekly contact with the Department, missed fourteen drug screens, missed eighteen visits with M.W., and tested positive for alcohol twice. Oliver testified that her main concern was Guerrero's volatile relationship with Welch and that he would allow her to be around the children. She noted that Guerrero did not fully start participating in the case until Welch went to inpatient drug treatment. She explained that Guerrero had not demonstrated he would keep M.W. safe because he did not have a plan in place for when Welch is released from treatment. The Department was worried Guerrero would allow Welch into his home upon her discharge given his inability to exercise good judgment throughout the case. Lastly, she testified that Welch and Guerrero have a history of domestic violence and that it is the reason J.G.(1) originally went into foster care in Oklahoma.

Welch testified that she would have liked to continue a relationship with Guerrero, but at J.G.(2)'s birth, Guerrero made it clear to her that he did not want a relationship. She also denied any issues of domestic violence between her and Guerrero.

Guerrero testified that he wanted M.W. and J.G.(1) to live with him along with his three older children who were currently living with him. He said he had been with Welch off and on for four years and their relationship most recently ended in February 2019. Guerrero testified he did not intend to enter into another relationship with Welch or let her live with him. He could not provide a stable child-care plan, but he hoped the

Department could help him get the children enrolled in a day-care center or that his mom could help.

On August 27, 2019, the court entered an order terminating Guerrero's parental rights and finding that both grounds pled in the petition supported termination. The court's order cited that its main concern was that Guerrero would not choose his child over his unstable relationship with Welch. The court further found it was in M.W.'s best interest to terminate Guerrero's rights. Specifically, the court found that M.W. is adoptable and that her foster parents wish to adopt her. The court also found that the potential harm to M.W.'s health and safety would be too great if she were returned to Guerrero's custody. This appeal followed.

We review termination-of-parental-rights cases de novo. *Heath v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 255, at 5–6, 576 S.W.3d 86, 88–89. We review for clear error, and a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* A court may order termination of parental rights if it finds clear and convincing evidence to support one or more statutory grounds listed in the Juvenile Code, Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2019), and that termination is in the best interest of the child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A).

On appeal, Guerrero first argues that the circuit court erred in finding that a statutory ground supported termination. He asserts that the evidence did not support the court's finding that he and Welch would continue in a relationship.

Proof of only one statutory ground is sufficient to terminate parental rights. *Corley v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 397, at 4–5, 556 S.W.3d 538, 541–42. The subsequent-factors ground, codified at Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)*, provides that termination is appropriate when

> other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parents.

Here, the evidence supports the court's subsequent-factors finding. Guerrero's argument that the court erred in finding that he would continue a relationship with Welch asks us to grant greater credence to his and Welch's testimony that their relationship is over, which we will not do. We give a high degree of deference to the circuit court because it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 90, at 3, 455 S.W.3d 347, 350. As the circuit court noted in its decision, the clearest evidence of Guerrero and Welch's continuing relationship was the fact that during the case, Welch gave birth to another child fathered by Guerrero. J.G.(2) was born two weeks before the termination hearing, establishing that he was presumably conceived well after the case had started.

The evidence further established that Guerrero and Welch repeatedly ended their relationship but then would rekindle it. Therefore, it was not unreasonable for the court to assume that the relationship would continue after Welch was released from drug treatment. It is well settled that a parent's past actions over a meaningful period of time are good indicators of what the future may hold. *Easter v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 441, at 8, 587 S.W.3d 604, 609. Additionally, Oliver testified that she lacked confidence that the relationship would not continue and that she was concerned that Welch had no plan for her exit from drug rehabilitation and could end up living with Guerrero again. We defer to the circuit court's finding that Oliver's testimony was more credible than Guerrero's and Welch's self-serving testimony.

Moreover, the court found as a subsequent factor that Guerrero had never been in full compliance with the case plan and court orders. For the first nine months of the case, Guerrero missed eighteen visits with M.W. and fourteen drug screens, which was contrary to the case plan. Failure to comply with court orders can serve as a subsequent factor on which termination of parental rights can be based. *See Gonzalez v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 425, at 9, 555 S.W.3d 915, 920. Even though Guerrero became consistent with his visits and showed more commitment to caring for M.W. in the months leading up to the termination hearing, we have consistently held that a parent's last-minute attempts do not justify reversal. *See Bean v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 77, at 38, 513 S.W.3d 859, 876. Accordingly, we hold that the circuit court did not clearly err in finding that the Department proved this ground.

Next, Guerrero argues that the circuit court erred in finding that termination was in M.W.'s best interest. In making a best-interest determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential harm to the child if custody is returned to a parent. *Easter*, 2019 Ark. App. 441, at 8, 587 S.W.3d at 608–09.

On appeal, Guerrero does not challenge the adoptability finding, so we address only the potential-harm prong of the circuit court's best-interest finding. In assessing this factor, the circuit court is not required to find that actual harm would ensue if the child is returned to the parent or to affirmatively identify a potential harm. *Id*. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability when not in a permanent home. *Id*.

Here, the evidence that supports the subsequent-factors ground also supports the court's best-interest finding. Throughout the history of the case, Guerrero was never in full compliance with the case plan. While he made progress toward the end of the case, it still was not certain that he would separate himself from Welch. The circuit court chose not to believe Welch's and Guerrero's self-serving assertions that they would not resume their relationship after Welch completed inpatient drug treatment. Rather, the court chose to put more weight in the caseworker's lack of confidence in Guerrero's claims. Guerrero himself testified that he was sporadically with Welch for four years and only purportedly ended the relationship four months before the termination hearing. Given this evidence, there is no clear error in the circuit court's finding of potential harm. We therefore affirm the termination of Guerrero's parental rights.

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor child.