Cite as 2021 Ark. App. 193

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-20-667

| | | |
|---|---|---|
| | | **Opinion Delivered:** April 28, 2021 |
| FRANCES PERRY | | |
| | APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47BJV-18-45] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | | HONORABLE RALPH WILSON, JR., JUDGE |
| | APPELLEES | |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

The Mississippi County Circuit Court terminated appellant Frances Perry's parental rights to her two children, S.P. and T.P. On appeal, Frances argues that the trial court erred in terminating her rights because there was insufficient evidence of grounds and because termination was not in her children's best interest. We affirm.

### I. *Background*

On May 1, 2018, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect as to S.P. and T.P. In an affidavit attached to the petition, a family-service worker attested that the sheriff's office had called DHS on April 27 to report that, while doing a welfare check, it was discovered that the home in which S.P. and T.P. resided "wasn't in livable conditions." When the service workers went to that home, which belonged to Robert Perry, S.P. and T.P.'s father, they discovered that

there was trash piled up in the kitchen, there were dog feces on the floor, and there were no beds for S.P. and T.P., who were then ages thirteen and eight, respectively. Robert was described as "irate" and tested positive for amphetamines and methamphetamine. The children were taken into DHS custody. Frances's contact information was "unknown."

In a probable-cause order dated May 11, 2018, it was noted that Frances was living in Missouri and must come to Arkansas to receive services. She was ordered to comply with standard welfare orders, including that she remain drug-free, submit to random drug screens, obtain and maintain safe and stable housing, obtain stable employment, and cooperate with DHS. On June 20, 2018, the children were adjudicated dependent-neglected based on environmental neglect and neglect due to Robert's drug use. The trial court noted that Frances had not contributed to the dependency-neglect, but it also found that she was not a fit parent for purposes of custody.

In a review order entered September 27, 2018, the trial court noted that Frances had partially complied with the case plan in that she had watched the video "The Clock Is Ticking" and had participated in most visitations; however, Frances was not employed and continued to reside outside of Arkansas where services were difficult to provide. Another review order was entered January 9, 2019, finding that Frances had complied with the case plan and that she was employed. A permanency-planning order was entered May 6, 2019, in which the trial court found that Frances had complied with the case plan and court orders in that she had completed parenting classes, was employed, and had recently obtained housing. The trial court found that, while Frances had tested positive for opiates, methamphetamine, and amphetamines on January 25, 2019, she had since tested negative.

In a fifteen-month review order entered June 21, 2019, the trial court noted that Robert had died. The trial court found that, while the goal at the permanency-planning stage had been reunification or APPLA (another planned permanent living arrangement), the goal of the case should be changed to adoption. The trial court found that Frances had not complied with the case plan in that she "continues to use controlled substances, having tested positive as recently as May 9, 2019"; she was not visiting the children regularly; and she had only recently obtained housing and started substance-abuse treatment. Another review order was entered November 7, 2019, in which the trial court found that Frances had partially complied with the case plan but that she had had minimal contact with the children since the last hearing and was residing out of state "with her paramour." On the same day, DHS filed a petition for termination of Frances's parental rights. The termination hearing was scheduled but continued several times. On July 22, 2020, a hearing was held.

Sharon Washington, a DHS caseworker, testified that Frances lived in Arkansas from September 2018 until January 2019 when she chose to move to Missouri. Washington stated that DHS had offered to assist Frances with locating housing in Arkansas but that Frances had declined. She said that, during the pendency of the case, Frances had had at least seven residences. Washington testified that she had been informed the day before the hearing that Frances had found stable housing through an organization in Missouri, that Frances had not yet moved into the home, and that she had been in transitional housing for the last two or three weeks.

Washington testified that Frances periodically tested positive for methamphetamine and amphetamines, as recently as February 19, 2020. She said that Frances had requested

3

that a hair-follicle test be done to prove the drug test was wrong and that DHS had scheduled that testing. Washington said that Frances did not attend on the scheduled date, that she offered numerous excuses for not being able to take the test thereafter, including that she was living in Tennessee for a month as a result of the COVID-19 lockdown, and that she did not ultimately submit to a hair-follicle test. Washington testified that she could not assist Frances with services across state lines. She said that Frances had told her that she had been receiving services in Missouri but had not provided any documentation, except from the Stapleton Center, indicating that Frances had begun drug treatment.

Washington testified that the foster parents wanted to adopt T.P. but were not as certain when it came to adopting S.P. She stated, however, that there was nothing to prevent both children from being adopted.

Frances conceded that she had had at least nine residences over the last two years. She testified that she had moved away from Arkansas in early 2019 to get away from other drug users but that it had not turned out to be any better in Missouri because she continued to use methamphetamine. Frances said that she had lived with people who "weren't all that great" and that she would not want her children to be associating with those people.

Frances testified that she was living only thirty miles from Blytheville and that DHS had offered to take her from Blytheville to the hair-follicle test she requested. She said that she could not make the scheduled date because her friend did not have the gas to get there or had something to do during that time. She said that DHS had offered to take her to the test on another date that was convenient for her but that she could not find an available date. She testified that she currently goes to Breakthrough Recovery meetings every night

and goes to church and Bible study three days a week. Frances said that it had been a couple of months since she had last used her drug of choice: methamphetamine. She later said that she had not used methamphetamine since February 2020. Frances said that she had been receiving services in Missouri "off and on for a year" but that she had only "continuously" participated in the Breakthrough Recovery program since May 2020.

Frances said that Missouri DAEOC (Delta Area Economic Opportunity Corporation) was helping her with the first six months' rent for her current housing and assisting her to pay her bills. She testified that she is currently living in transitional housing, that her house would be available that day or maybe the next day, and that she has beds and bedding for the children. Frances said that she is ready for S.P. and T.P. to come home with her; however, later in her testimony she stated that she needs "a little bit more time" in recovery away from her "usual crowd" and additional time to get the services she needs to be the mother she wants to be. Frances said that she realizes her children have been in foster care for two years.

Jennifer Towe, employee of the Workforce Development Board of Missouri stationed at Family Counseling Center, testified that Frances had been in and out of the Breakthrough Recovery program for a year, that she had come back in May 2020, and that she had gotten Frances in transitional housing on June 24. She said that Frances was "doing very well actually" and that her last urine drug screen on July 13 was negative. Asked if Frances is ready to take her children home with her that day, Towe testified that Frances needs a couple of weeks. She said that Frances will have housing for six months, which will be reviewed in another six months, but that Frances has to meet requirements in order to

maintain the housing; specifically, she must remain drug free. Towe said of Frances, "I do think she's committed to staying on track. I believe so. We had a very long heart to heart." She conceded that Frances does not have a very good track record but said that she thinks anybody can change.

An order terminating Frances's parental rights was entered August 27, 2020. The trial court found the following grounds for termination under Ark. Code Ann. § 9-27-341(b)(3)(B) (Repl. 2020): (i)*(a)* (twelve-month failure to remedy); (vii)*(a)* (subsequent factors); and (ix)*(a)(3)(A)-(B)(i)* (aggravated circumstances – little likelihood). The trial court also found that termination was in the children's best interest. The trial court noted that the children are adoptable and that potential harm could come to them if placed in Frances's custody due to her continued use of methamphetamine, her association with known drug addicts, and her lack of housing and support. Frances timely filed a notice of appeal.

## II. *Standard of Review*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the child, taking into consideration (1) the likelihood that the child will be adopted if the termination petition is granted, and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The trial court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark. Code Ann. § 9-27-341(b)(3)(B).

Termination–of–parental–rights cases are reviewed de novo. *Tillman v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 119. The appellate inquiry is whether the trial court's finding

that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Williams v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 622. In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005).

Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Friend v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 606, 344 S.W.3d 670. In deciding whether to terminate the parental rights of a parent, the trial court has a duty to look at the entire picture of how that parent has discharged his or her duties as a parent. *Id*. The purpose of the termination–of–parental–rights statute, Ark. Code Ann. § 9–27–341(a)(3), is to provide permanency in a child's life in all instances in which the return of a child to the family home is contrary to the child's health, safety, or welfare, and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time, as viewed from the child's perspective. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Shaffer v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 208, 409 S.W.3d 182.

III. *Discussion*

A. Grounds

Frances argues that the twelve-month failure-to-remedy ground cannot apply to her because she was not the custodial parent from whose custody the children were removed. We agree that this ground did not apply; however, proof of only one statutory ground is sufficient to terminate parental rights. *Sharks v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569. The trial court also found that Frances had subjected the children to aggravated circumstances, meaning that the trial court determined that there was little likelihood that services would result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)-(B)(i)*. There must be more than a mere prediction or expectation on the part of the trial court that reunification services will not result in successful reunification. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

Frances argues that, if DHS had provided her services without requiring her to move to Arkansas, she could have obtained drug treatment and housing earlier on in the case. She argues that, despite the lack of help from DHS, she was able to obtain services on her own in Missouri. She asserts that, at the time of the termination hearing, she had "months of sobriety, a support system, employment and a home." Frances argues that it would be speculative to say that a critical service such as transportation would not have resulted in successful reunification because she was not offered this service in the form of cash assistance.

The aggravated-circumstances ground does not require that DHS prove that meaningful services toward reunification were provided. *See, e.g., Willis v. Ark. Dep't of*

8

*Human Servs.*, 2017 Ark. App. 559, 538 S.W.3d 842. Nevertheless, Frances was offered numerous services, including transportation, but she did not take advantage of many of these services. In fact, she chose to move from Arkansas knowing that DHS would have difficulty providing services to her across state lines, and she declined DHS's offer of assistance to find housing in Arkansas. Frances's children were in DHS custody for over two years, yet Frances did not demonstrate that she had achieved stability in that time. She last tested positive for drugs five months before the termination hearing; she thereafter avoided having a hair-follicle test that could have proved her claim of sobriety; and she began drug treatment in Missouri only two months prior to the termination hearing. Moreover, Frances had lived in at least seven residences when she was not homeless; she was in transitional housing having signed a lease two days before the termination hearing; and her ability to maintain her temporary housing depended on her remaining drug free. Frances's continuation of drug treatment and acceptance of transitional housing are the type of eleventh-hour efforts that will not override her children's need for permanency and stability. *See Boomhower v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 397, 587 S.W.3d 231. We cannot say that the trial court clearly erred in terminating Frances's parental rights on the basis of aggravated circumstances.

## B. Best Interest

Frances argues that the trial court erred in determining that termination of her parental rights was in her children's best interest. Specifically, she contends that there was absolutely no evidence that she posed "a real risk" of harm to them. In considering potential harm caused by returning the child to the parent, the trial court is not required to find that

actual harm would result or affirmatively identify a potential harm. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. Potential-harm evidence must be viewed in a forward-looking manner and considered in broad terms. *Tillman*, *supra*. A parent's past behavior is often a good indicator of future behavior. *Shaffer v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 208, 489 S.W.3d 182.

The same evidence that supports the aggravated–circumstances ground of little likelihood of successful reunification is sufficient to support the trial court's potential-harm finding. *See, e.g.*, *Kloss v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 389, 585 S.W.3d 725. Frances asserts that she had "conquered" her drug habit. Clearly, the trial court did not believe her, and we defer to the trial court's credibility determinations. *Camarillo-Cox*, *supra*. A court report indicates that Frances tested positive for methamphetamine in January, May, and June 2019 and in February 2020. Frances insisted on having a hair-follicle test but then avoided the numerous attempts made by DHS to schedule and transport her to the test. We have held that continued drug use by a parent demonstrates potential harm. *Jones v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 615, 508 S.W.3d 897; *Jackson v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 440, 503 S.W.3d 122. To her credit, Frances admitted at the termination hearing that she needed more time with her recovery; however, a child's need for permanency and stability may override a parent's request for additional time. *See Henderson v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 191, at 10, 377 S.W.3d 362, 386 (affirming trial court's determination that termination was in child's best interest when mother's drug rehabilitation was "still a work in progress").

Frances also argues that the trial court failed to consider the sibling relationship between S.P. and T.P. when determining best interest. She points out that DHS was unsure regarding the adoptive prospects of S.P. and whether S.P. and T.P. could be adopted together. According to Frances, the trial court did not consider the impact on the children if they are separated.

Evidence of a genuine sibling bond is required to reverse a best-interest finding based on the severance of a sibling relationship. *Brown v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 370, 584 S.W.3d 276. Here, there was little to no evidence of the bond shared by S.P. and T.P., and Frances did not make this particular argument to the trial court. We will not address arguments raised for the first time on appeal, even in termination cases. *Mitjans v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 472, 561 S.W.3d 747. In any event, keeping siblings together is an important consideration but is not outcome determinative as the best interest of each child is the polestar consideration. *Martin v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 192, 596 S.W.3d 98. The separation of S.P. and T.P. was not a foregone conclusion, and there is no indication that the trial court did not take into consideration the sibling relationship before making its decision. We cannot say that the trial court clearly erred in finding that termination of Frances's parental rights was in her children's best interest.

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

11

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.