Cite as 2023 Ark. App. 16

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-22-355

| | |
|---|---|
| GAYLON SCROGGINS <br><br> APPELLANT <br><br><br> V. <br><br><br> ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN <br><br> APPELLEES | Opinion Delivered January 25, 2023 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION <br> [NO. 60JV-20-408] <br><br><br> HONORABLE TJUANA C. BYRD, JUDGE <br><br> AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Gaylon Scroggins appeals the Pulaski County Circuit Court's order terminating his parental rights to his children, MC1 and MC2. On appeal, Scroggins argues that grounds do not support termination of his parental rights and that termination is not in the children's best interest. We affirm.

On April 29, 2020, the Arkansas Department of Human Services (DHS) received a Garrett's Law report involving MC2. The report stated that Scroggins's wife, Kelly McElyea, who is the children's mother, tested positive for THC and methamphetamine less than

twenty-four hours after giving birth to MC2.[1] McElyea denied the drug use, but MC2 had to be moved to the NICU because of withdrawals.

Family service worker Cora Owens-Wilson completed a home assessment. Owens-Wilson found the home deplorable. She observed trash, clothes, and dog feces on the floor throughout the home. DHS took a seventy-two-hour hold on both MC2 and MC1. At the time of removal, the father, Scroggins, had a no-contact order due to domestic violence against McElyea and MC1. The domestic violence resulted in criminal charges against Scroggins for domestic abuse.

On May 11, 2020, DHS filed an amended petition for emergency custody of MC1 and MC2, and on the same day, the circuit court entered an emergency order granting DHS's petition. On May 14, the circuit court held a probable-cause hearing wherein it found probable cause that the emergency conditions that necessitated removal of the juveniles continued and that it was in the juveniles' best interest to remain in the custody of DHS. Further, the circuit court ordered that McElyea have supervised visitation and denied Scroggins any visitation at that time. Additionally, the circuit court ordered McElyea and Scroggins to submit to drug-and-alcohol screens and psychological evaluations. Both MC1 and MC2 were ordered to receive urine and hair-shaft drug screens.

On June 18, the circuit court held an adjudication hearing wherein it adjudicated MC1 and MC2 dependent-neglected as a result of abuse, neglect, and parental unfitness.

---

[1]McElyea executed a voluntary relinquishment of her parental rights, so she is not a party to this appeal.

Specifically, the circuit court found that McElyea subjected MC2 to neglect and MC1 to abuse due to drug exposure. UAMS records showed that MC2's cord-blood sample tested positive for amphetamines, methamphetamine, and THC. McElyea tested positive for the same drugs at that time. Also, Arkansas Children's Hospital records showed that after removal, MC1 also tested positive for amphetamines, methamphetamine, and THC on a hair drug test.

The court determined that neither parent was a credible witness. Specifically, as to Scroggins, the court found him not credible when he testified that he was unaware of McElyea's drug use. Further, while the court found that Scroggins did not contribute to the reason for removal since he was not living in the home when the juveniles were removed, the court did not find Scroggins to be a fit parent. The circuit court set the case goal as reunification, ordered Scroggins to submit to a hair shaft drug test, and ordered both parents to (1) submit to a psychological evaluation; (2) submit to random drug-and-alcohol screens and periodic hair shaft drug tests; (3) attend individual counseling; (4) submit to drug-and-alcohol assessments; and (5) follow the recommendations and obtain/maintain stable housing. At that time, McElyea was allowed to have supervised visitation, but due to the no-contact order, Scroggins had no visitation rights. Later, on July 14, the circuit court found that based upon the psychological evaluation, and without any objection, supervised visitation was in the children's best interest.

On October 6, the circuit court held a review hearing. The court found that Scroggins had moved out of his parents' house because they were being considered as a placement for

3

the children, and he had moved in with his cousin. His next court date on the domestic-abuse charges was set for December 7, 2020. Further, the court found that both parents were willing to work on their relationship to stay together as a couple. Additionally, the court found that the parents had made an effort to comply with court orders. However, the court stated that "it remains to be seen how much actual progress is being made." Scroggins's psychological evaluation showed the capacity to parent. The court continued the goal of reunification and found that DHS had made reasonable efforts by providing an approved foster home; board payments; medical services; home visits; drug screens; supervised visitation; and referrals for psychological evaluations, parenting, drug-and-alcohol assessments, inpatient substance-abuse treatment, and counseling.

On February 9, 2021, the circuit court held a permanency-planning hearing. At this hearing, the court continued the goal of reunification. Further, the court found the parents had made efforts to comply with court orders. Additionally, the circuit court found that Scroggins was living with a relative and attending individual counseling. He tested positive on an alcohol screen on October 8, 2020. He still had domestic-battery charges pending and visitation had only been by Zoom because of COVID-19. Additionally, the court declined to authorize unsupervised visitation for Scroggins and stated that he needed to resolve his criminal charges. The court found DHS had made reasonable efforts by providing an approved foster home; board payments; medical services; home visits; drug screens; supervised visitation; and referrals for psychological evaluations, parenting, drug-and-alcohol assessments, inpatient substance-abuse treatment, and counseling.

On May 25, the circuit court held another permanency-planning hearing. At this hearing, the court continued the goal of reunification. The court found that Scroggins had tested positive for buprenorphine (BUP) on March 4, but seven other drug tests were negative. Additionally, the court found that both parents had violated the no-contact order when McElyea conceived a child with Scroggins in March. The court found that Scroggins had complied to the extent he could with court orders and the case plan. Scroggins visited the children, and there was testimony that he was taking online domestic-violence classes. Scroggins still had pending charges. The court stated that the parents shall continue in counseling, Scroggins shall submit to drug screens as requested, and Scroggins shall provide documentation of attendance of the online domestic-abuse counseling and also ensure that the issue is being addressed in his individual counseling. Further, Scroggins was ordered to resolve his criminal charges. Again, the court found that DHS had made reasonable efforts by providing an approved foster home; board payments; medical services; home visits; drug screens; supervised visitation; and referrals for psychological evaluations, parenting, drug-and-alcohol assessments, inpatient substance-abuse treatment, and counseling.

On September 30, 2021, the circuit court held a fifteen-month review hearing. The circuit court changed the goal of the case to adoption and termination of parental rights. Amanda Hope, DHS supervisor and acting caseworker since July 2021, testified that Scroggins had tested positive for BUP on March 4, 2021. He was not supposed to have contact with McElyea due to a no-contact order arising from a domestic-violence incident, but he and McElyea were expecting another child in December. Scroggins did complete

random drug screens, a psychological evaluation, a drug-and-alcohol assessment, and a hair-follicle drug screen and was engaged in individual counseling for a time.

Though he had filed for divorce, Scroggins testified that he was willing to work with McElyea to get back into the marital home. The court found that Scroggins had attended domestic-violence classes online and attended individual counseling until his therapist left. The court further found DHS had made reasonable efforts by providing an approved foster home; board payments; medical services; home visits; drug screens; supervised visitation; and referrals for psychological evaluations, parenting, drug-and-alcohol assessments, inpatient substance-abuse treatment, and counseling.

On December 7, 2021, DHS filed a petition to terminate both McElyea's and Scroggins's parental rights. On February 4, 2022, the circuit court held a termination hearing and terminated Scroggins's parental rights to both MC1 and MC2. Specifically, the circuit court found that DHS had met its burden of proving "subsequent factors" as provided by Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii) (Supp. 2021) as to Scroggins based on his lack of demonstrated parental fitness, unresolved criminal charges, and instability regarding his relationship with McElyea. Additionally, the circuit court found that it was in the juveniles' best interest to terminate Scroggins's parental rights because the children are adoptable and due to the potential harm they would suffer if returned to Scroggins's custody. Specifically, the court found that if returned to Scroggins, the children would be at risk of domestic violence because he is likely to reunite with McElyea. It is from this termination order Scroggins now appeals.

Termination-of-parental-rights cases are given de novo review. *E.g.*, *L.W. v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 44, at 8, 380 S.W.3d 489, 494. Additionally, appellate courts will not reverse a termination order unless the findings were clearly erroneous, meaning "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Id.* at 9, 380 S.W.3d at 495. Further, appellate courts give due regard to the circuit court's ability to assess a witness's credibility. *Id.*, 380 S.W.3d at 494.

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that at least one ground for termination existed and that termination is in the juvenile's best interest. *Id.* at 9–10, 380 S.W.3d at 494–95. "Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established." *E.g.*, *Watkins v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 55, at 4. In considering the best-interest finding, the circuit court must consider the likelihood that the juvenile will be adopted and the potential harm that could be caused to the juvenile if returned to the parent. *E.g.*, *L.W.*, 2011 Ark. App. 44, at 11, 380 S.W.3d at 496. However, unlike termination grounds, potential harm and adoptability are only factors for the circuit court to consider, and each factor need not be established by clear and convincing evidence. *Id.*, 380 S.W.3d at 496.

In its termination order, the circuit court found that DHS had proved by clear and convincing evidence the "subsequent factors" ground:

7

> That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile(s) in the custody of the parent(s) is contrary to the juvenile(s)'s health, safety or welfare and that despite the offer of appropriate family services, the parent(s) has/have manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent(s)'s circumstances which prevent the placement of the juvenile(s) in the custody of the parent(s).

Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*.

Scroggins contends this was in error. However, his argument is without merit. Scroggins's brief simply states: "This ground fails because there have been no subsequent factors that arose for which an [sic] family services were offered, and Gaylon never showed an indifference to remedy any issues that arose after the case was opened." Scroggins does not discuss the circuit court's ruling as to the subsequent factors or how he remedied the issues that arose.

Here, the case was initially opened because DHS received a Garrett's Law report involving MC2. Both MC2 and MC1 were removed from the legal custody of their parents, McElyea and Scroggins, because of McElyea's substance abuse that seriously affected her ability to supervise and protect or care for the juveniles. At the time of removal, Scroggins had a no-contact order due to domestic violence against McElyea and MC1. The circuit court found that Scroggins needed counseling to address his anger and domestic-violence issues, and drug testing. Throughout this case, DHS made meaningful efforts to reunify Scroggins with his children by offering him multiple family services, such as an approved foster home; board payments; medical services; home visits; drug screens; supervised visitation; and referrals for psychological evaluations, parenting, drug-and-alcohol assessments, and

8

outpatient counseling. Although there was a no-contact order in place throughout this case from a domestic-violence incident, Scroggins and McElyea had a baby who was born in December 2021. Further, Scroggins has failed to resolve his criminal charges as ordered. Failure to comply with court orders can serve as a subsequent factor on which termination of parental rights can be based. *See Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, at 9, 555 S.W.3d 915, 920.

Scroggins has also demonstrated throughout this case that he is unwilling to sever his relationship with McElyea, even though evidence shows that is what is needed for the return of his children. Continuing in a relationship with a dangerous partner is sufficient evidence of factors arising subsequent to removal and can demonstrate a parent's incapacity or indifference. *See, e.g.*, *Martin v. Ark. Dep't of Hum. Servs.*, 2017 Ark. 115, at 12, 515 S.W.3d 599, 607 (affirming circuit court's subsequent-factors decision based on father's inability to separate from his children's abuser).

In its termination order, the circuit court found that Scroggins

> has not had to provide full time, day and night around the clock care for the children. He has not gotten that far in the case after 22 months to demonstrate parental fitness on a full-time basis by extended time overnights or trial home placement.

The court also found that Scroggins was not fit to provide full-time care for the children, and there was no evidence to the contrary. The court went further, noting in the order that

> Scroggins has checked the boxes as to court ordered services, but there is no evidence that his counseling has benefitted him to understand the consequences of his continued relationship with his wife and its effects on him and his ability to have custody of these children.

9

Proof of only one statutory ground is sufficient to terminate parental rights. *Barris v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 380. Here, the record is clear that returning the children to Scroggins would be contrary to their welfare on the basis of evidence demonstrating Scroggins's indifference to remedying the circumstances preventing reunification—including his failure to remedy his criminal charges; his instability; and more importantly, his continued relationship with McElyea. As such, we affirm the circuit court's finding that DHS proved the subsequent-factors ground.

Sufficient evidence also supports the circuit court's best-interest finding in this case. The court may determine whether it is in a juvenile's best interest to terminate parental rights by considering the juvenile's adoptability and the potential harm caused by returning the juvenile to the parent. *E.g.*, *Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, at 7, 585 S.W.3d 725, 729–30. Scroggins fails to challenge the adoptability factor of the circuit court's best-interest finding; thus, we are not required to address this factor on appeal. *See, e.g.*, *Easter v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 441, at 8, 587 S.W.3d 64, 608 ("Easter does not challenge the adoptability finding, so we address only the potential-harm prong of the circuit court's best-interest finding.").

Scroggins does, however, challenge the potential-harm factor. For potential harm, "the trial court is not required to find that  actual harm would result or to affirmatively identify a potential harm." *E.g.*, *Kloss*, 2019 Ark. App. 389, at 7, 585 S.W.3d at 730.

Here, the circuit court found that Scroggins and McElyea continued to have a relationship, including having another child together, despite the no-contact order in place.

10

"A parent's past behavior is often a good indicator of future behavior." *E.g.*, *Perry v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 193, at 10, 625 S.W.3d 374, 381. Scroggins argues that there is no evidence that these children were mistreated by him. However, he completely ignores the fact that the no-contact order is in place because of his domestic violence against McElyea and MC1.

Nevertheless, Scroggins maintains that the circuit court's potential-harm finding was clearly erroneous because he completed the case-plan services. We have long held that completion of case-plan services is irrelevant when the parent continues to make decisions that are contrary to the best interest of the child, and an appellate court will not reverse a circuit court's decision when the appellant's argument is nothing more than a request to reweigh the evidence. *E.g.*, *Black v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 518, at 9, 565 S.W.3d at 524 ("What matters is whether completion of the case plan achieved the intended result of making a parent capable of caring for the child; mere compliance with the orders of the court and DHS is not sufficient if the roots of the parent's deficiencies are not remedied."); *Bentley v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 374, at 13, 554 S.W.3d 285, 293 ("But under the standard of review, we do not act as a super fact-finder, and it is not reversible error for the circuit court to weigh the evidence differently than how Bentley asks the evidence to be weighed."). As such, we hold that there was sufficient evidence to support a potential-harm finding and affirm the circuit court's order terminating Scroggins's parental rights.

Affirmed.

11

GLADWIN and BROWN, JJ., agree.

*Dusti Standridge*, for appellant.

*Demarcus D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.