Cite as 2025 Ark. App. 54

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-24-634

| | | |
|---|---|---|
| | | Opinion Delivered February 5, 2025 |
| CASSANDRA SMITH | | |
| | APPELLANT | APPEAL FROM THE INDEPENDENCE COUNTY CIRCUIT COURT [NO. 32JV-22-33] |
| V. | | |
| | | HONORABLE LEE WISDOM HARROD, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | | |
| | | AFFIRMED |
| | APPELLEES | |

**N. MARK KLAPPENBACH, Chief Judge**

Cassandra Smith appeals from the order of the Independence County Circuit Court terminating her parental rights to two children. On appeal, Smith challenges the circuit court's finding that termination was in the children's best interest. We affirm.

This case began in February 2022 when Smith's two-month-old minor child (MC1) was taken to the hospital with unexplained tears to her tongue and lip. Smith and MC1's putative father, Harlan Steinert, both appeared to be under the influence of drugs at the hospital as evidenced by erratic behaviors and an inability to focus and answer questions. Smith tested positive for methamphetamine, amphetamine, and buprenorphine, and she had a prescription for Suboxone. The family had prior true findings relating to Smith's two other minor children, one-year-old MC2 and three-year-old MC3. The children were taken

into custody by the Arkansas Department of Human Services (DHS). MC3, who has a different father than the other two children, was placed with his paternal grandparents.

MC1 was transported to Arkansas Children's Hospital where it was revealed that she had five healing rib fractures and three to four healing leg fractures. The adjudication hearing was postponed because both parents were incarcerated on criminal charges related to MC1's injuries. The children were eventually adjudicated dependent-neglected based on abuse and neglect, and reunification was set as the case goal. Due to Smith's bond conditions prohibiting contact with the children, visitation was initially not possible. By the time the case was reviewed in August 2022, her bond conditions had been modified so that she could have visitation. Smith was partially compliant with the case plan in that she had enrolled in counseling and was in inpatient drug treatment.

At the permanency-planning hearing, reunification continued as the goal, but at the fifteen-month review hearing in May 2023, the court changed the goal to adoption for MC1 and MC2. Guardianship was made the goal for MC3. The court found that Smith had recently moved in with an individual who had a history with DHS and had not had background checks. Furthermore, Smith's criminal case was still pending.

The termination hearing was held in January 2024.[1] With regard to the criminal charges Smith faced at the outset of this case, Smith testified that she did not know what she

---

[1]MC3's paternal grandparents were granted a guardianship over him in August 2023. Thereafter, he was no longer part of this DHS case. MC1 and MC2's putative father, Steinert, was dismissed from the proceeding at the beginning of the termination hearing because he had no legal rights to terminate.

2

had pleaded guilty to. Records showed, however, that she had pleaded guilty in August 2023 to endangering the welfare of a minor, a Class D felony, and was sentenced to five years' probation. Smith testified that because she had used methamphetamine and accidentally reported to her probation officer a week late, a petition to revoke her probation was filed, and she went to jail for two weeks. A petition for revocation dated October 9, 2023, was admitted into evidence and showed that Smith was alleged to have violated probation conditions by using controlled substances, associating with known felons, not reporting to her probation officer, and not paying her supervision fees. Smith testified that she went to jail again in December for five days after failing an alcohol test. Smith testified that she went to court the day before the termination hearing, and the prosecuting attorney gave her the name of a drug-treatment program she planned to enter. She acknowledged that she was not current on her financial obligations and said that her next court date was in March 2024.

Smith acknowledged that she is a drug addict but testified that she had not used methamphetamine during most of this case. She admittedly relapsed in September 2023 after her mother had passed away, but she said that she had not used methamphetamine since then. She said that she went to a drug class once a week and counseling once a month. She hoped to enter the drug-treatment program for thirty days, and afterwards, the program would help her find a job and a place to live. Although Smith had a prescription for Suboxone, her behavior caused DHS to be concerned she was overusing it. DHS had informed her not to use it during her visitations because they believed it impaired her ability to parent.

Smith testified that she had been in a relationship with David Stuart for almost two years. She acknowledged her previous testimony that they had broken up, but she said they married less than a month later. She said they married because her probation officer indicated she would not get in trouble for associating with a felon if they were married. Smith testified that she did not remember being told by DHS that living with Stuart was a problem. Smith was aware that Stuart's children had been involved in DHS cases, and one child lived with a relative as a result. Smith had never met his children. Smith and Stuart lived together in a camper on property belonging to Stuart's parents. She said that Stuart was not currently working because he was trying to get into an inpatient drug-treatment program; however, she claimed that he was sober because he had not failed drug tests while on parole. The revocation petition alleged that Smith had admitted using methamphetamine with Stuart, but she testified that he was not with her when she used. She believed that going to treatment would help them get back on their feet financially and save money to get a bigger place to live.

Family service worker Christine King testified that Stuart had signed forms for background and child-maltreatment checks, and the results of those checks prevented DHS from recommending that the children be placed in a home where he lives.[2] Additionally, Stuart had not been drug tested by DHS or participated in the case. King testified that she told Smith on multiple occasions that DHS would not recommend returning the children

---

[2]King testified that she did not have access to the details of the checks, but she was told they did not come back "good."

to her so long as she was with Stuart. King said that Smith got upset and left every time she tried to talk about Stuart.

In addition to the above issues, King testified that another factor that prevents returning the children to Smith is her parenting abilities. Smith had completed parenting classes, but DHS had ongoing concerns about her parenting. The program assistant was trained in parenting and had provided hands-on teaching during visits, but Smith still struggled with watching both children at the same time. King did not feel that she could properly supervise them and had a lot of concerns that they would not be safe. King testified that MC1 and MC2 had been in the same foster home for the entire case except for two brief unsuccessful attempts to place them with relatives. The current placement is interested in adopting them, they have no significant health or behavioral issues, and there is a high likelihood they will be adopted.

The circuit court terminated Smith's parental rights upon finding that termination was in the children's best interest and that two statutory grounds had been proved.

We review termination-of-parental-rights cases de novo. *Everly v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 528, 589 S.W.3d 425. At least one statutory ground must exist in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3)(A), (B) (Supp. 2023). In making a best-interest determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential harm to the child if custody is returned to a parent. *Id.*

5

We will not reverse a termination order unless the circuit court's findings are clearly erroneous. *Everly*, *supra*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Credibility determinations are left to the fact-finder. *Id.*

On appeal, Smith limits her arguments to the best-interest determination. She argues that the evidence does not demonstrate that the children would be at risk of potential harm if returned to her custody. She notes that she was sober for much of the case; that she participated in parenting classes, counseling, and drug treatment; and that she intends to enter inpatient treatment. Smith argues that DHS should have been able to detail what its concerns were regarding Stuart and should have involved him in the case plan.

In assessing potential harm, the circuit court is not required to find that actual harm would ensue if the child is returned to the parent or to affirmatively identify a potential harm. *Easter v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 441, 587 S.W.3d 604. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability when not in a permanent home. *Id.* Past actions of a parent over a meaningful period are good indicators of what the future may hold. *Id.*

Smith maintained a relationship with Stuart despite DHS's warning that her relationship with him would impede her ability to regain custody of her children and despite her knowledge that he is a felon, is a drug addict, and does not have custody of his own children pursuant to a DHS case. The relationship threatened her sobriety and her

6

probation status, and she did not attempt to have Stuart rehabilitate himself with DHS. Although she claimed they are both drug-free, Smith testified that they both planned to enter inpatient treatment to get back on their feet. Furthermore, despite parenting classes and ongoing teaching, DHS still had concerns about Smith's ability to properly supervise the children. At the time of the termination hearing, the children were two and three years old and had been in the same foster home for nearly two years. Given these facts, we cannot say that the circuit court clearly erred in finding that termination was in the children's best interest.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.