Cite as 2020 Ark. App. 315

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-20-67

|  |  |
|---|---|
| ELAINEA BELT AND JONATHON THOMAS<br><br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** May 20, 2020<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FJV-03-499]<br><br>HONORABLE LEIGH ZUERKER, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Elainea Belt and Jonathon Thomas both appeal the Sebastian County Circuit Court's order terminating their parental rights to their minor children. We affirm.

On April 27, 2017, the Arkansas Department of Human Services (DHS) opened a protective-services case involving Thomas, Belt, and their children, H.R.,[1] K.R.,[2] B.B., J.B., J.T.(1), J.T.(2), and J.T.(3)[3] due to Thomas's and Belt's drug use and environmental neglect.

---

[1]H.R. turned eighteen years old during the pendency of the case, and the circuit court issued an order on September 12, 2019, dismissing him from the case. H.R. is not a party to this appeal.

[2]DHS's petition to terminate parental rights and the court's termination order did not seek termination as to K.R., and she is not a party to this appeal. The circuit court set an "alternative planned permanent living arrangement" or "APPLA" as the case goal for K.R. due to her age and circumstances.

[3]Thomas is the father of J.T.(1), J.T.(2), and J.T.(3). Belt is the mother of all the children.

As part of this protective-services case, DHS provided services and requested that Thomas and Belt submit to random drug screens, complete a drug-and-alcohol assessment and follow its recommendations, complete parenting classes, participate in intensive family services ("IFS"), resolve all legal issues, create a payment plan with HUD, and take the children to their doctors' appointments and counseling. On May 15, 2017, both parents tested positive for THC, and DHS referred Thomas and Belt for a drug-and-alcohol assessment; however, they both failed to attend their appointments. Additionally, both parents had warrants out for their arrest for failure to pay fines, and neither completed parenting classes. K.R. then accused Belt and Thomas of domestic violence; Belt failed to provide K.R. with her medication; and the family home was environmentally inappropriate on multiple occasions during home visits. As result, on August 1, DHS exercised emergency custody of all six children. Thomas was arrested that same day for failure to pay fines.

DHS then filed a "Petition for Emergency Custody and Dependency-Neglect" of the children, and on the same day, the circuit court entered an order granting DHS's petition. On August 10, the circuit court held a probable-cause hearing wherein, by stipulation of the parties, it found probable cause for the emergency order to continue. Additionally, the circuit court found that DHS had made reasonable efforts by offering services to the family to prevent removal.

On September 28, 2017, the circuit court held an adjudication hearing. It adjudicated the children dependent-neglected based on parental unfitness and neglect. Additionally, the circuit court set a goal of reunification and ordered Thomas and Belt to complete parenting classes; submit to a psychological evaluation; submit to a drug-and-alcohol assessment and follow its recommendations; visit the children; submit to random drug screens and hair-follicle

2

tests; and obtain and maintain stable housing, employment, income, and transportation. On January 4, 2018, the circuit court held a review hearing at which it continued the goal of reunification. At this hearing, the circuit court found that all the children, except for H.R., were placed together at the "Young Children's Home" in Fort Smith, Arkansas, and that DHS had made reasonable efforts toward the goal of reunification. The circuit court also found that the parents lacked transportation; visited the children; completed their drug-and-alcohol assessments; were enrolled in drug treatment; and had housing, although it was unclear if the housing was appropriate. Additionally, the circuit court ordered the parents to complete parenting classes.

On April 17, 2018, Belt gave birth to another child, K.T. Thomas is the presumed father of K.T. because he was married to Belt at the time of K.T.'s birth. On April 26, the circuit court held another review hearing wherein it continued the goal of reunification and added a concurrent goal of adoption for B.B., J.B., J.T.(1), J.T.(2), and J.T.(3). At this hearing, the circuit court found that these five children remained in their previous placement and again found that DHS had made reasonable efforts. Additionally, the circuit court approved a plan for the children to transition into the parents' home after the school year with the help of IFS services.

On June 27, DHS exercised emergency custody of K.T. due to the following: Belt's providing alcohol to a minor, K.R.; the parents' failure to appropriately supervise the children during their unsupervised weekend visitation; the parents' positive hair-follicle tests; and the parents' failure to follow visitation rules. As a result, on July 2, DHS filed a petition for emergency custody and dependency-neglect of K.T., and the circuit court entered an order granting this petition the same day. On July 5, the circuit court held a probable-cause hearing

3

for K.T. It found that probable cause existed for the emergency order to remain in place and found that DHS had made reasonable efforts to prevent removal.

On August 6, the circuit court held an adjudication hearing for K.T., and on the basis of the parties' stipulation, it adjudicated K.T. dependent-neglected based on parental unfitness. Specifically, the circuit court found that the parents continued to blame K.R. for the issues in this case; they continued to test positive on drug screens and hair-follicle tests; and they made poor parenting decisions concerning K.T.'s siblings. Additionally, the circuit court ordered Belt and Thomas to maintain stable housing, employment, income, and transportation; and it ordered Thomas to complete drug treatment, visit the children, and submit to random drug screens, hair-follicle tests, and alcohol swabs. Further, the circuit court ordered that if the parents decided to remain together as a couple, they must complete marriage counseling.

The circuit court also held a permanency-planning hearing for the six youngest children. At this hearing, the circuit court found that DHS had made reasonable efforts and, considering Belt's and Thomas's "significant measurable progress," it continued the concurrent goals of reunification and adoption for B.B., J.B., J.T.(1), J.T.(2), J.T.(3), and K.T. Specifically, the circuit court found that only Belt—and not Thomas—had housing, income, and transportation, and the court noted that Thomas would begin drug treatment the following day.

On October 18, 2018, the circuit court held a fifteen-month-review hearing wherein it again found that DHS had made reasonable efforts, and it continued the goal of reunification for the six youngest children. Additionally, the circuit court approved DHS's plan to begin unsupervised weekend visitation for the six youngest children for one month. Further, the

4

court noted that Thomas had an active warrant for his arrest for unpaid fines, and Thomas was arrested at the conclusion of the hearing.

On December 13, the circuit court held a review hearing for the six youngest children and continued the goal of reunification. At this hearing, the circuit court found that DHS had made reasonable efforts and that the six youngest children remained placed together in the same foster home. Additionally, the circuit court provided DHS with the discretion to increase visitation and begin a trial home placement. Sometime thereafter in December, DHS placed B.B. and J.B. on a trial home placement with Belt and Thomas, and it transitioned J.T.(1) and J.T.(2) into the trial home placement sometime in February 2019.

However, the trial home placement for these four children ended in approximately April 2019 due to domestic violence and Belt's arrest for the same unpaid fines that she had at the beginning of the case. On May 30, 2019, the circuit court held a permanency-planning hearing wherein it continued the concurrent goals of adoption and reunification for the six youngest children and found that DHS had made reasonable efforts. At this hearing, the circuit court found that Belt had "somewhat complied" with the case in that she had income, submitted to drug screens, and visited the children. The court also found that Belt needed to obtain housing, complete domestic-violence classes, and resolve her criminal issues. As for Thomas, the circuit court found that he failed to attend his recent drug-and-alcohol assessment, tested both positive and negative on drug screens, and did not have housing or income. Additionally, the circuit court ordered Thomas's visits to be supervised by DHS, and it ordered Thomas to complete domestic-violence classes.

On July 15, 2019, DHS filed a petition to terminate Belt's and Thomas's parental rights. On August 23, September 10, and October 1, 2019, the circuit court held termination-of-

5

parental-rights hearings at which it took testimony from Belt, Thomas, a DHS employee, the children's counselor, and the children's foster father. The court terminated Belt's and Thomas's parental rights on the following grounds: "failure-to-remedy," Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2019); "subsequent-factors," Ark. Code Ann. § 9-27-341(b)(3)(B)(vii); and "aggravated circumstances," Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)–(B)(i)*.

The circuit court found that it was in the children's best interest to terminate Belt's and Thomas's parental rights because the children are adoptable and because the potential harm they would suffer if returned to their parents' custody. Key findings from the court's termination order included its conclusion that Belt had lacked housing for much of the case and still lacked appropriate housing and stable transportation at the time of the hearing. It noted that, although Belt had visited the children regularly, completed parenting classes, and made progress working the case plan, she was also repeatedly arrested and jailed throughout the case for failure to pay the same fines she owed when the children were first taken into care. Belt had made only one sixty-dollar payment during the case, and the court noted that the plan she presented at the termination hearing for resolving these legal issues had already proven to be unsuccessful over the preceding two years. The court also found that Thomas had lacked stable housing, income, and transportation throughout the case, had not visited the children since mid-July, and had tested both positive and negative on drug screens throughout the case. Thomas testified that he had last used drugs approximately two months before the termination hearing began. Finally, the court noted that at the time of initial removal, both parents had active warrants for their arrest, which later contributed to the decision to end the trial placement of the children in their custody and were still active at the time of the

6

termination hearing. The court further found that there was little likelihood that continued services and additional time would result in successful reunification. The court found that the children were adoptable. It noted that J.B. was adoptable despite his current behavioral and mental-health issues, finding that those were "due to the trauma experienced while in his parents' home." The court found that returning the children to their parents' custody would subject them to a substantial risk of harm because the children need stability that the parents are unable to provide. The court noted that "Thomas is unable to even take care of himself at this time," and it cited the testimony of the children's counselor, Sarah Morton, and found that the children need structure and continued consistent treatment, which the court did not believe that the parents could provide. The court terminated both parents' parental rights, and this appeal followed. Both parents have filed separate briefs seeking reversal of the circuit court's termination order.

Termination-of-parental-rights cases are reviewed de novo. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, at 9, 379 S.W.3d 703, 708. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.*, 379 S.W.3d at 708. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.*, 379 S.W.3d at 708. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*, 379 S.W.3d at 708. In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*, 379 S.W.3d at 708. Termination of parental rights is an extreme remedy and in derogation of a

parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*, 379 S.W.3d at 708. As with all issues addressing child placement, the appellate court affords heightened deference to the circuit court's superior position to observe the parties personally and weigh credibility. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 215, 40 S.W.3d 286, 292–93 (2001).

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the child, taking into consideration (1) the likelihood that the child will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Pine*, 2010 Ark. App. 781, at 9–10, 379 S.W.3d at 708–09. Additionally, the circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. *Id.* at 10, 379 S.W.3d at 709.

Neither Belt nor Thomas challenge the court's finding that DHS proved grounds for termination. Their only arguments for reversal relate to best interest. When deciding best interest, the circuit court must look at all the circumstances, including the potential harm of returning the children to their parents' custody, specifically the effect on the children's health and safety, and it must consider the likelihood that the children will be adopted. Ark. Code Ann. § 9-27-341(b)(3). Belt challenges the court's best-interest findings on both issues, while Thomas challenges only the court's finding of potential harm.

In considering the potential-harm factor, the circuit court is not required to find that actual harm would result or to identify specific potential harm. *Gonzalez v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 425, at 12, 555 S.W.3d 915, 921. Additionally, "a parent's failure to

8

comply with court orders is sufficient evidence of potential harm, and . . . a failed trial home placement may be considered evidence of potential harm." *Id.* at 12–13, 555 S.W.3d at 921–22. Further, potential harm includes a child's lack of stability in a permanent home; a court may consider a parent's past behavior as a predictor of future behavior; and the same evidence that supports the subsequent factors ground may also support potential harm. *Id.* at 12, 555 S.W.3d at 921.

Here, both parents failed to fully comply with the court's orders. Moreover, during the case, both parents were repeatedly arrested, and both failed to pay their fines, leaving them subject to future arrest. A trial home placement ended due to Thomas's domestic violence and Belt's arrested for failure to pay the same fines that were outstanding at the start of this case. Finally, while Belt argues that the children "got worse" in DHS's care, there was also evidence that their anxiety and behavioral problems manifested after visitation with Belt and Thomas and were the result of trauma the children experienced in their parents' home.

Belt challenges the court's risk-of-harm finding, arguing that the children were more at risk in foster care than in her care, while Thomas makes almost the opposite argument, claiming that there was no need to terminate his parental rights because the children had a stable and safe foster placement that could allow for more time to try to achieve reunification. Both arguments miss the mark. The juvenile code requires the court to evaluate the potential harm the juveniles would face if returned to the parent. Here, despite receiving two years of services, neither Belt nor Thomas was in a position to care for the children. Neither parent had stable housing or sufficient income, and both demonstrated a cascading wave of instability throughout the case (drug use, arrests, unstable housing, insufficient income, unreliable transportation, a failed trial placement, and domestic violence).

9

Finally, with regard to risk of harm, Thomas argues that at a minimum, this court should remand the case for the circuit court to address whether he was referred for housing services as well as other "critical services." This argument has no merit because services are not a required element in determining best interest, and Thomas has not challenged the court's finding that grounds existed for termination. Alternatively, even if DHS were under some obligation to provide Thomas with specific services related to the court's best-interest finding, the court repeatedly found that DHS had made reasonable efforts, and Thomas did not contest these findings. Ark. Code Ann. § 9-27-341(b)(3)(A)(i)–(ii); *see Phillips v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 565, at 11, 567 S.W.3d 502, 509. We find no error in the circuit court's risk-of-harm findings.

Belt also challenges the court's adoptability finding. She argues that DHS's evidence regarding adoptability was "weak" and "equivocal." She points out that while one of the foster parents testified that he and his wife would be interested in adopting the children together, he said they would have to wait and see how J.B.'s therapy progresses before deciding whether they would adopt J.B. Moreover, she questions the weight given to the DHS caseworker's testimony that there was no reason the children could not be adopted since they are "all cute and fun loving kids." Belt argues that this does not adequately address the true likelihood that they will be adopted. Again, this argument misses the mark. For adoptability, "[t]he Juvenile Code does not require 'magic words' or a 'specific quantum' of evidence." *E.g., Atwood v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 448, at 6–7, 588 S.W.3d 48, 52. Additionally, "[a] caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding." *E.g., Strickland v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 608, at 10, 567 S.W.3d 870, 876. Here, the court clearly heard and considered adoptability, and the evidence

10

demonstrated that the children are adoptable. It showed that the children (except for J.B.) were together in a foster home with foster parents who would like to adopt them, and that even J.B., who has significant emotional and behavioral issues, is being considered for adoption by a specific foster family. We therefore find no error in the court's adoptability finding. As such, we affirm the court's order terminating both Belt's and Thomas's parental rights to all six children.

Affirmed.

KLAPPENBACH and WHITEAKER, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for separate appellant Elainea Belt.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for separate appellant Jonathon Thomas.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.