Cite as 2021 Ark. App. 350

# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CV-21-126

| | |
|---|---|
| JEROME JACKSON | **Opinion Delivered** September 22, 2021 |
| APPELLANT | |
| | APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT |
| V. | [NO. 62JV-18-34] |
| | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE ANN HUDSON, JUDGE |
| APPELLEES | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Jerome Jackson appeals the December 18, 2020 order of the St. Francis County Circuit Court terminating his parental rights to his three children: S.S. (DOB 10/12/15), M.S. (DOB 5/17/17), and J.J. (DOB 5/31/18). On appeal, he argues the circuit court erred by finding that the ground of failure to remedy the issues causing removal supported termination. We affirm.

### I. *Facts*

Teyondra Stokes is the mother of four children: B.S., S.S., M.S., and J.J.[1] On July 23, 2018, the Arkansas Department of Human Services (DHS) exercised an emergency seventy-two hour-hold on B.S., S.S., M.S., and J.J. when a family service worker visited

---

[1]Teyondra Stokes's parental rights to her four children were also terminated in the December 18, 2020 order. She is not a party to this appeal.

Stokes's home for an assessment and found Stokes to be incoherent and J.J. covered in feces. Stokes admitted she had been snorting cocaine, smoking marijuana, and had taken some "mystery pills." All four children were removed from Stokes's custody due to neglect, abuse, and/or parental unfitness—specifically, drug abuse, environmental neglect, and inadequate supervision.

Jackson appeared before the court for the first time at the January 15, 2019, review hearing. He was determined to be the legal father of S.S., M.S., and J.J.. In the review order, the circuit court ordered Jackson to be drug tested and to cooperate with the therapist providing counseling. The circuit found Jackson had somewhat complied with the case plan in that he had exercised visitation. The goal of the case at that time was reunification and remained so until the December 10, 2019, permanency-planning order was entered. The December 2019 order changed the goal of the case to guardianship upon the finding that Jackson was not an appropriate caregiver because of his current living conditions and his status as a registered sex offender.

Jackson testified he was not in favor of a guardianship and requested the appointment of an attorney, which the circuit court granted. A review and permanency-planning hearing was held on August 11, 2020. During this hearing the circuit court heard testimony from Nichole Hopkins, DHS's county supervisor for St. Francis County, that Jackson's visitation with the children had been sporadic, he had a difficult time controlling and managing the children when they visited in person at the DHS office, and family service workers had to step in to help on several occasions. Hopkins stated Jackson rarely stayed for the entire visit with the children. Hopkins informed the circuit court Jackson received assistance from a

2

home-health agency. Jackson also tested positive for amphetamine, methamphetamine, marijuana, and K2 on July 27, 2020. The circuit court found Jackson had not complied with the case plan or court orders and specifically noted Jackson was not in a position to take care of his children. As a result, the circuit court changed the goal of the case to adoption and ordered that any services received from the date of the order would be the responsibility of the parents.

DHS filed a petition to terminate Jackson's parental rights on September 30, 2020, alleging three bases: (1) the termination of parental rights was in the best interest of the children, taking into consideration the likelihood the children would be adopted if the termination petition was granted and the potential harm to the health and safety of the children caused by returning the children to the custody of the mother and father under Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2021); (2) the children were adjudicated dependent-neglected and had continued out of Jackson's custody for a period of twelve months, and despite a meaningful effort by DHS to correct the conditions causing removal, the conditions have not been remedied under Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*; and (3) other factors arose subsequent to the filing of the original petition for dependency-neglect demonstrating placement of the children in custody of the parent is contrary to the children's health, safety, or welfare and that despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the circumstances preventing the placement of the children in custody of the parent under Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*.

A hearing on the termination petition was held on November 3, 2020. Nichole Hopkins testified that the children were currently placed with the maternal grandparents, and their health and safety needs were being met. She testified this case had been ongoing for almost twenty-four months. Hopkins informed the circuit court that Jackson had completed the ordered drug-and-alcohol assessment and the recommended outpatient classes. Hopkins testified that Jackson had tested positive for illegal substances on two occasions. Hopkins testified that she observed ten to twenty of Jackson's and Stokes's joint visits with the children. She said Jackson would often be on his phone during the visits and would leave early. Once the visits became separate, Jackson would leave frustrated because Stokes was not there. Jackson would need help controlling the children. She stated he stayed the full allotted time for the visit on only one occasion.

Hopkins testified that DHS had assessed Jackson's home and did not recommend the children be placed with him prior to his latest positive drug screen. DHS had concerns regarding his mental stability and his daily capability due to the home-health services he receives for assistance with medication, grocery shopping, and paying bills combined with his inability to control the children's behaviors. Hopkins testified there was also a concern due to his status as a registered sex offender. Hopkins stated that placing the children with Jackson would create a danger to them due to all these factors. When asked about Jackson's mental health, Hopkins explained he has several mental-health diagnoses such as posttraumatic stress disorder and borderline personality disorder. She informed the circuit court that the current placement provider wanted to provide the children with a permanent home.

4

Jackson testified that his only source of income is from disability benefits, and he lives by himself and has room in his house for the children. He conceded the children had not lived with him in his home. Jackson admitted missing two or three weeks of visits with his children due to a communication error. Jackson testified that he played with his children during his in-person visits, and the children are ready to come home to him. As to the home-health services, Jackson stated that for over two years, he has had an aide who comes if he needed "to go pay bills or stuff like that, or go washing or anything."

Jackson testified that he is currently taking Seroquel, Xanax, and Percocet. He stated his medicine was really for his depression, although he also stated he takes the Xanax and Percocet for pain due to an old bullet wound. He denied the results of the positive drug screen were accurate. However, he admitted signing the drug-screen results and not disputing the results.

Jackson testified that he had never been offered parenting classes, and testimony of other witnesses that he had not completed them was false. He informed the circuit court that he had completed everything that was asked of him. He did a drug assessment and went to therapy at Mid-South and was getting positive feedback from his therapist and his doctor. At the conclusion of Jackson's testimony, he stated he and Stokes had resumed their relationship.

On December 18, 2020, the circuit court entered an order terminating Jackson's parental rights finding it was in S.S., M.S., and J.J.'s best interest and that DHS had proved the twelve-month failure-to-remedy ground for termination. This appeal followed.

## II. *Standard of Review*

We review termination–of–parental–rights cases de novo. *Gonzales v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915. At least one statutory ground must exist in addition to finding that it is in the child's best interest to terminate parental rights. *Rivera v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 405, 558 S.W.3d 876. These must be proved by clear and convincing evidence. *Id.* In making a best-interest determination, the circuit court is required to consider two factors: (1) the likelihood the child will be adopted and (2) the potential harm to the child if custody is returned to a parent. *Id.* The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Credibility determinations are left to the fact-finder. *Id.*

## III. *Discussion*

### A. Failure to Remedy as Cause for Removal

Jackson first argues the circuit court erred in relying on Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)* for termination because his conduct did not cause the children's removal. This particular ground requires (1) the child be adjudicated dependent-neglected; (2) the child be out of the custody of the parent for twelve months; and (3) the parent failed to remedy the conditions that caused the child's removal. *Jackson v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 411, 429 S.W.3d 276. Jackson is correct. The children came into DHS custody because of the mother's drug usage. Jackson's absence was not the cause

6

of the removal; thus, this provision is not applicable to him and cannot support a ground for termination.

## B. Subsequent Factors

Jackson argues the circuit court did not have sufficient evidence to support a finding as to the "subsequent factors" ground as a reason for termination. We disagree.

The "subsequent factors" section of the termination statute provides as follows:

> That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*. Accordingly, DHS was required to prove (1) other factors arose subsequent to filing the original dependency-neglect petition; (2) the parent was offered appropriate family services; and (3) the parent manifested incapacity or indifference to remedying the subsequent issues. *Brumley v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 90, 455 S.W.3d 347.

The court found multiple subsequent factors as ground for termination including (1) positive drug test for multiple substances two years after the children's removal; (2) Jackson's mental health and stability; (3) Jackson's resumption of his relationship with Stokes during the pendency of the case demonstrating the placement of the children in Jackson's custody would be contrary to their well-being; and (4) Jackson's failure to complete parenting classes with sufficient evidence Jackson lacked the capacity to remedy those factors.

7

Jackson contends the only "fact" pled by DHS to support this ground for termination was his one positive drug-screen result from July 27, 2020. He points out he was ordered to attend a drug-and-alcohol assessment, which he did, and he completed the recommended outpatient treatment program. Jackson relies on this court's opinion in *Kight v. Arkansas Department of Human Services*, 87 Ark. App. 230, 189 S.W.3d 498 (2004), as support for reversing a termination of parental rights when a parent has a single drug relapse after drug treatment. *Kight* is distinguishable for several reasons. *Kight* addressed the failure-to-remedy ground that is not applicable to Jackson. Further, unlike Kight, Jackson's noncompliance with the case plan demonstrated his general unfitness, and more than twenty-four months had transpired in the case. By contrast, in *Kight*, drug use was the only basis for parental unfitness; Kight had a single isolated incident of drug use and completed a second round of inpatient treatment, and only seven months had elapsed since the case began.

The circuit court relied on much more than Jackson's "single positive drug screen" to terminate his parental rights. Jackson has the following diagnoses: posttraumatic stress disorder, borderline personality disorder, antisocial personality disorder, personal history of self-harm (swallowing a razor blade on one occasion), and general paranoia (hearing voices) related to a schizoaffective disorder. While Jackson successfully completed a twelve-week program of individual substance-abuse counseling, there is no indication in his mental-health records that counseling services were near completion. His progress is normally noted as "slight progress" or "no progress" in his therapy notes. The subsequent-factors statute specifically provides that the inability or incapacity to remedy or rehabilitate includes, but is not limited to, mental illness, emotional illness, or mental deficiencies. *See* Ark. Code Ann.

8

§ 9-27-341(b)(3)(B)(viii)*(c)*; *see also Porter v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 680, 378 S.W.3d 246 (diagnosis of personality disorder, which could not quickly be fixed, was sufficient evidence of "other factors" arising subsequent to the petition). Therefore, evidence of mental illness arising subsequent to the petition for dependency-neglect can be relied on to demonstrate incapacity or indifference. *Brandau v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 87, at 23–24, 512 S.W.3d 636, 650. Thus, Jackson's mental-health issues support the circuit court's finding of subsequent factors.

Jackson testified he receives some services from home-health care, although he said they help him pay bills and do laundry on occasion and only sometimes. Our review of the Silver Lining Senior Care, LLC, personal-care service records reflects much more than someone simply coming by to help him pay bills or do laundry. It is noted Jackson needs help paying bills and understanding documents or letters he receives. He needs assistance getting in and out of the tub and putting his clothes on and partial assistance with grooming, skin care, and medication reminders. This, combined with the testimony that Jackson had difficulty managing the children during his visits at the DHS offices, makes it clear Jackson would not be able to properly care for his children. Jackson was ordered to attend parenting classes but failed to do so. A parent's failure to comply with court orders can serve as a subsequent factor upon which termination can be based. *Johnson v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 533. This failure to attend parenting classes supports the circuit court's subsequent-factors finding.

Finally, Jackson and Stokes testified they had resumed their relationship during the pendency of the case. This court has found that the risk created by resuming a relationship

9

with a mother whose rights were also terminated supports the circuit court's findings as to the subsequent-factors ground for termination. *Phillips v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 169, 596 S.W.3d 91. This also supports the circuit court's finding of subsequent factors.

Beginning January 15, 2019, Jackson was ordered to accomplish minimal goals to provide a suitable home for his children. At the end of twenty-four months, Jackson had failed to remedy the subsequent factors despite appropriate services having been offered. Although Jackson is correct that the court cannot rely on the failure to remedy that caused removal as grounds for termination, only one ground is necessary to terminate parental rights. *Rivera*, 2018 Ark. App. 405, 558 S.W.3d 876. For the foregoing reasons, we hold that the subsequent-factors ground for termination was proved by clear and convincing evidence, and the circuit court did not err in its finding.

Affirmed.

HARRISON, C.J., and KLAPPENBACH, J., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Casey D. Copeland*, attorney ad litem for minor children.