Cite as 2021 Ark. App. 355

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–21–65

| | |
|---|---|
| CHRISTY ANN KELLEY<br><div align=right>APPELLANT</div><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><div align=right>APPELLEES</div> | **Opinion Delivered** September 22, 2021<br><br>APPEAL FROM THE SEARCY COUNTY CIRCUIT COURT [NO. 65JV-19-13]<br><br>HONORABLE SUSAN WEAVER, JUDGE<br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Christy Kelley appeals from an order terminating her parental rights to her daughter, AF1 (DOB 12-04-2017).[1] On appeal, Christy argues that there was insufficient evidence to support the sole statutory ground found by the trial court, which was aggravated circumstances. Christy also challenges the trial court's finding that termination of her parental rights was in AF1's best interest. We affirm.

In order to terminate parental rights, the trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child

---

[1]Christy's younger daughter, AF2 (DOB 04-06-2019), was also involved in these dependency-neglect proceedings, but Christy voluntarily relinquished her parental rights to AF2 before the termination order involving AF1 was entered. The father of AF2 also voluntarily relinquished his parental rights. The father of AF1 is unknown.

caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2021). The order terminating parental rights must also be based on a showing by clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Best v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 485, 611 S.W.3d 690.

A trial court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

This case began on July 29, 2019, when appellee Arkansas Department of Human Services (DHS) filed a petition for emergency custody of AF1 and AF2. When the petition was filed, Christy was herself a minor, being seventeen years of age. Christy was living with her mother, Virginia Darby, in Leslie, Arkansas, and the children were in Christy's custody.

Attached to DHS's petition was the affidavit of a family service worker. The affidavit stated that Christy had left three-month-old AF2 with babysitters for extended periods of

time without checking on AF2's health or safety. Upon investigation, Christy's mother advised that she could help Christy care for AF1 but could not help care for AF2. Christy's mother confirmed that AF2 had been left with a babysitter for a week and that neither she nor Christy knew the whereabouts of the baby during that week other than being dropped off at the babysitter's house. Ultimately, AF2 was brought to the sheriff's office by a woman known only as "Gail."[2] Christy advised that she did not really know Gail and was unaware that AF2 had been with Gail. Based on these facts, on July 29, 2019, the trial court entered an ex parte order of emergency custody of both AF1 and AF2.

The trial court entered a probable-cause order on August 6, 2019. In the probable-cause order, Christy was ordered to submit to random drug screens, complete parenting classes, maintain employment or enrollment in school, maintain appropriate and stable housing, submit to a psychological evaluation, and attend counseling.

On October 1, 2019, the trial court entered an order placing the children in a trial home placement with Christy with conditions. The trial court ordered the children returned to Christy on a trial basis provided she was supervised by the maternal grandmother with whom they live or other persons approved by DHS.

On December 2, 2019, the trial court entered an adjudication order finding AF1 and AF2 dependent-neglected. In the adjudication order, the trial court noted that it had ordered a trial home placement of both children with Christy on October 1, 2019, but that AF2 was returned to foster care on October 7 at Christy's request.[3] AF1 was ordered to

---

[2]Although it was initially suspected that AF2 had been sexually abused, that suspicion was later found to be unsubstantiated.

[3]In an affidavit filed by a DHS caseworker, it was asserted that Christy reported being overwhelmed with two young children. Christy informed DHS that she could take care of

remain with Christy in the trial home placement. The goal of the case was reunification with the concurrent plan of adoption.

A review order was entered on April 14, 2020. In the review order, the trial court found that Christy was in only minimal compliance with the case plan. Christy had missed intakes for her psychological evaluation and had been attending school-based counseling before skipping and then dropping out of school. The trial court noted that AF1 had been in Christy's custody on a trial basis but that AF1 was removed from Christy's custody in February 2020. Christy had moved out of her mother's house and lived with her boyfriend in an adjacent county. The trial court found that Christy had attended visits with AF1 but had attended only one visit with AF2, and Christy stated that she no longer wanted to visit AF2.

A permanency-planning hearing was held on June 18, 2020.[4] In the permanency-planning order, the trial court changed the case goal to adoption, stating that there was no fit parent to return the children to, nor was there a relative willing to make a long-term commitment to the children. The trial court found that Christy had not complied with the case plan or orders of the court. The trial court noted that Christy did not want to work toward reunification with AF2 and found that Christy lacked adequate housing or sufficient income to care for the children.

---

AF1 because AF1 was a little older. However, Christy thought it would be best for AF2 to be placed back into foster care and to be adopted.

[4]The permanency-planning order arising from this hearing was subsequently entered on August 13, 2020.

On July 27, 2020, DHS filed a petition to terminate Christy's parental rights as to both AF1 and AF2. On September 30, 2020, Christy voluntarily relinquished her parental rights to AF2. The termination hearing involving AF1 was held that same day.

On November 12, 2020, the trial court entered an order terminating Christy's parental rights to AF1. The trial court found by clear and convincing evidence that termination of parental rights was in the child's best interest, and the court specifically considered the likelihood that the child would be adopted, as well as the potential harm of returning her to the custody of her mother as required by Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The trial court found that AF1 is young and healthy and that there was undisputed testimony that she is adoptable. The trial court found potential harm in returning AF1 to Christy's custody because of Christy's noncompliance with the case plan, inadequate housing, inadequate income, and lack of capacity to independently care for the child. The trial court also found clear and convincing evidence of one statutory ground. Pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)*, the trial court found that Christy had subjected AF1 to aggravated circumstances in that there is little likelihood that services to the family will result in successful reunification.

Christy was the first witness to testify at the termination hearing. Christy stated that at one point during this case she had moved out of her mother's house and lived with her boyfriend. Christy stated that she and her boyfriend broke up, and that she moved back into her mother's house several months ago and still lives there. Also living in her mother's home is Christy's brother and Christy's infant son, DK. DK was born during this case but is not a party to these dependency–neglect proceedings.

5

Christy stated that she dropped out of high school in the eleventh grade but is working toward a GED. She also stated that she does not have a driver's license. Christy works at a dairy bar two days a week earning $50 a day. She stated that she is able to take DK to work with her. Christy expected that she would soon be given more work hours at the dairy bar, and she had also applied for other jobs. Christy stated that she gets WIC benefits for DK and was looking into applying for SSI benefits.

Christy testified that her mother does not work but that her mother receives about $1600 a month in disability benefits. Christy's mother also receives $515 in monthly food stamps. Christy's mother pays all the household bills.

Christy testified that she is closely bonded with AF1 and wants AF1 back in her home. Christy stated that she had been visiting AF1 regularly, and that during these visits AF1 had become bonded with DK. Christy stated that if she regained custody of AF1, she could either take AF1 to work with her or have her mother care for AF1 while she was at work. Christy thought she was ready to have AF1 placed back in her home immediately.

Dr. George DeRoeck performed a psychological evaluation of Christy. Dr. DeRoeck testified that Christy's full-scale IQ score is 65, that she reads on a fourth-grade level, and that she is functioning in the mild intellectually deficient range. Dr. DeRoeck did not believe that Christy had the capacity to independently care for her children. Dr. DeRoeck thought Christy had the ability to be involved in the ancillary care of her children, but not independent care.

Dr. DeRoeck further testified that Christy has a number of unmet social and emotional needs that may interfere with favorable judgment. He thought that Christy had the potential to be exploited by others and that she was open to allowing people to babysit

her children with limited oversight by her. Dr. DeRoeck thought there was a possibility that Christy might leave her children with inappropriate caregivers, which would pose a risk of harm to the children.

In Dr. DeRoeck's evaluation, he gave the impression that Christy did not present with the capability to effectively parent and that alternative placement was indicated. Dr. DeRoeck noted that there was already one infant child in Christy's home and stated that "if we added another child, that makes this even more complicated."

Hayley Hogue is Christy's counselor, and Ms. Hogue testified that she thought Christy was making progress in counseling. Ms. Hogue stated that Christy had expressed the desire to be more independent. Ms. Hogue, however, stated that Christy's insight was limited for someone her age and that she would need continued counseling to work toward independent living and parenting.

Katelyn Oliver testified that she is the DHS caseworker assigned to this case. Ms. Oliver stated that between July 2019 and May 2020, Christy had made "absolutely no progress" toward the case plan. Ms. Oliver acknowledged, however, that between May 2020 and the September 2020 termination hearing, Christy had started complying with the case plan and making some progress. Ms. Oliver stated, "Throughout the whole case, though, Christy had made very minimal progress."

Ms. Oliver stated that she had gone to Christy's mother's house six or seven times during the past month and that Christy was there only once, which was the day before the termination hearing. On that occasion the home was clean but smelled of marijuana. Ms. Oliver noted that Christy tested negative for drugs, but she suspected that marijuana was being used in the home by someone else. Ms. Oliver stated that Christy's mother,

Virginia Darby, was in poor health and was recently taken to the hospital due to a COPD attack. Ms. Darby uses oxygen for her COPD. Ms. Oliver thought that, due to Darby's medical conditions, she would have difficulty watching Christy's children.

Ms. Oliver testified that DHS had provided services to Christy, including referrals to programs where mothers can live with their children and receive parenting and other assistance. DHS has also assisted Christy with getting a job. Ms. Oliver stated that, despite DHS's efforts, Christy had not shown progress toward being able to independently support her children. Ms. Oliver further stated that because Christy was already caring for her infant son, if AF1 was returned to Christy's custody it could present a stressful and overwhelming situation. Ms. Oliver also thought that Christy had the propensity to be too trusting of others, which could put AF1 at risk if returned to her custody. Ms. Oliver stated that AF1 needs permanency and a stable home and that there were no other services DHS could offer to try to reunify Christy with AF1. Ms. Oliver stated that AF1 is healthy, that there were no barriers to AF1's being adopted, and that if parental rights were terminated, there would be families who are willing and able to adopt her. Ms. Oliver recommended terminating Christy's parental rights to AF1.

On appeal from the termination of her parental rights to AF1, Christy first challenges the sufficiency of the evidence supporting the single statutory ground found by the trial court. The trial court found that Christy had subjected AF1 to aggravated circumstances, meaning that there was little likelihood that services will result in successful reunification. In challenging this statutory ground, Christy asserts that she was complying with the case plan at the time of the termination hearing and had tested negative on every drug screen administered throughout the case. While acknowledging the evidence that she needs

8

assistance in parenting AF1, Christy contends that she lives with her mother and that her mother could provide that assistance. In support of this proposition, Christy notes that she has custody of her infant son, DK, for which no dependency-neglect case has been opened. Christy argues that, despite her present low-income level, she would be able to provide for AF1 because her mother has sufficient income to pay the household bills. Christy asserts that she has been making progress in counseling and should have been given more time toward reunification with AF1. She contends that, contrary to the trial court's finding, she could have achieved reunification with additional services.

We hold that the trial court's finding of aggravated circumstances was not clearly erroneous. The testimony of DHS caseworker Katelyn Oliver showed that Christy had made no progress toward the case plan during the first ten months after AF1's removal and that her overall progress at the time of the termination hearing was minimal. Although AF1 had been provisionally placed in Christy's custody during the case, that placement proved unsuccessful, and AF1 was returned to DHS custody. Dr. DeRoeck testified that Christy lacks the ability to independently parent AF1. There was testimony that although Christy lives with her mother, Christy's mother would be of limited assistance due to her health issues. Additionally, both Ms. Oliver and Dr. DeRoeck thought that there was a potential risk of harm if AF1 was returned to Christy's custody due to Christy's propensity to be overly trusting of others and leave AF1 with inappropriate caregivers, as Christy had done with AF2 when the dependency-neglect case was initiated. Both Ms. Oliver and Dr. DeRoeck indicated that a return of AF1 to Christy's custody would be stressful considering Christy already has custody of her infant son. There was also evidence that Christy lacks stability in that she dropped out of school, had temporarily moved out of her

9

mother's house to live with a boyfriend, has no driver's license, and has only $400 in monthly income working a part-time job. DHS services had been provided to Christy during the fourteen-month duration of the case, and Ms. Oliver testified that there were no additional services to offer Christy to reunify her with AF1. Ms. Oliver recommended termination of Christy's parental rights. Based on this record and deferring to the trial court's credibility determinations, we conclude that the trial court did not clearly err in finding that there was little likelihood that services would result in successful reunification.

Christy's remaining argument is that the trial court erred in finding that termination of her parental rights was in AF1's best interest. Citing *Bunch v. Arkansas Department of Human Services*, 2017 Ark. App. 374, 523 S.W.3d 913, Christy asserts that a parent's lack of financial means is an insufficient basis to terminate a parent's parental rights. Christy further contends that there was a lack of evidence that AF1 would be at risk of harm if returned to her custody.[5] In support of this claim, Christy cites *K.C. v. Arkansas Department of Human Services*, 2010 Ark. App. 353, 374 S.W.3d 884, a case in which we reversed the trial court's finding that the termination of the fifteen-year-old mother's parental rights was in the child's best interest. In *K.C.*, although there were questions about the mother's mental capacity to care for her child, we relied on the undisputed evidence that the mother was a good caregiver to the child and concluded that there was no evidence that the mother had caused potential harm to her son. Similarly, Christy argues that there was an absence of evidence that AF1 would be at a risk of potential harm in her custody.

---

[5]We observe that Christy does not challenge the trial court's finding that AF1 is adoptable.

The best-interest analysis in a termination case includes the consideration of the likelihood the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii); *Brown v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 370, 584 S.W.3d 276. However, there is no requirement that these factors be proved by clear and convincing evidence. *Renfro v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 419, 385 S.W.3d 285. Rather, after consideration of all the factors, the evidence must be clear and convincing that termination is in the best interest of the child. *Id.* Considering all the evidence presented in this case, we conclude that the trial court did not clearly err in finding by clear and convincing evidence that termination of Christy's parental rights to AF1 was in the child's best interest.

Although the evidence showed that Christy had limited income and no ability to independently provide for AF1, her lack of financial means or stability were not the only factors supporting the trial court's best-interest determination. Much of the evidence that supports the statutory ground of aggravated circumstances, discussed *supra*, also supports the finding that termination was in AF1's best interest. There was evidence that Christy had made minimal progress toward reunification and that she lacked the ability to independently parent AF1. There was also testimony raising concerns about Christy's lack of judgment and the propensity to trust her children with inappropriate caregivers, as she had demonstrated with AF2. In determining potential harm, the court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Simmons v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 233, 635 S.W.3d 318. Finally, there was testimony indicating that all of the above concerns would be exacerbated if AF2 were placed in Christy's custody simultaneously with Christy's infant

son. The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Having reviewed the evidence presented, and considering AF1's need for permanency, we hold that there was no clear error in the trial court's finding that termination of parental rights was in AF1's best interest.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.