Cite as 2021 Ark. App. 429

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–21–194

| | | |
|---|---|---|
| SHAWNA JENNINGS | | **Opinion Delivered** November 3, 2021 |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-19-810] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | HONORABLE STACEY ZIMMERMAN, JUDGE |
| | APPELLEES | AFFIRMED |

## MIKE MURPHY, Judge

Appellant Shawna Jennings appeals from the Washington County Circuit Court's termination of her parental rights to her child, L.J. (DOB: 06-08-2019). On appeal, Jennings argues that the termination order was not supported by sufficient evidence. She challenges both the circuit court's statutory and best-interest findings. We affirm.

On September 10, 2019, Jennings was arrested for possession of a controlled substance and endangering the welfare of a minor during a traffic stop at 4:49 a.m. On September 11, the Arkansas Department of Human Services ("DHS") exercised a seventy-two-hour hold on L.J. because there were no legal caretakers to prevent L.J. from going into foster care. On September 16, in addition to DHS's filing a petition for ex parte emergency custody and dependency-neglect as to L.J., it filed a petition for an ex parte emergency order for protection as to L.J.'s older siblings, S.J. (DOB: 05-20-2007) and A.M.

(DOB: 04-24-2006). DHS was granted emergency custody of L.J., and the court placed S.J. and A.M. in the custody of Adam McLendon, A.M.'s father. The circuit court later adjudicated the juveniles dependent-neglected due to Jennings's neglect and parental unfitness. The court found that the children would remain in their current custodial arrangements and set the goal as reunification with a concurrent goal of adoption or guardianship with a fit and willing relative. Among other directives, Jennings was ordered to enter and complete a residential treatment facility for substance abuse. The adjudication order also noted,

> The Court finds that DHS has been involved with the family since May 21, 2007 and that the following services, as outlined in the affidavit, were provided to the family: psychological evaluation, individual counseling, and drug/alcohol assessment. These services did not prevent removal due to the fact that the mother was arrested on September 10, 2019 for Possession of a Controlled Substance and Endangering the Welfare of a Minor. The Court finds that the efforts made to prevent removal of the juveniles were reasonable based on the family and juveniles' needs

On April 14, 2020, the court entered a review order. The court found that Jennings had not demonstrated stability and sobriety such that she could safely parent the juveniles. On August 10, the court entered a permanency-planning order. The court awarded permanent custody of A.M. and S.J. to Adam McClendon. Concerning L.J., the court changed the goal of the case to adoption and termination of Jennings's parental rights. The court found,

> Mother has complied with some of the court orders and the case plan. Specifically, the mother has completed residential treatment and has attended some counseling (attending once per month), and mother is currently employed. The mother has NOT: maintained contact with DHS, submitted to weekly random drug screens, attended visits consistently, demonstrated sobriety, maintain stable housing, and has not demonstrated the ability to protect the children and keep them safe from harm. Mother has not been stable in her housing or employment throughout this case. The testimony today is that Mother is in a ladies' living arrangement through drug court. Through her own admission, Mother states that she just used drugs in May of 2020.

2

Further, Mother's parole officer testified that she was not compliant when he supervised her. Even if Mother were in full compliance today, the court would have to find that the juveniles could return to Mother within three months. That cannot happen due to the bad choices made by Mother. Mother would have to show stability longer than three months before the children could be safely returned to her.

On September 9, DHS filed a petition for termination of parental rights alleging that termination was in L.J.'s best interest and citing statutory grounds of failure to remedy cause of removal, failure to remedy subsequent factors, and subjecting the child to aggravated circumstances. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*, (vii)*(a)* & (ix)*(a)(3)(A)* (Supp. 2021). The court granted Jennings's request for a continuance because the presiding judge was diagnosed with COVID-19, and Jennings did not want a special judge to hear the case. The hearing was called via Zoom on December 3 and was again continued due to Jennings's request for a new attorney. Jennings testified that there was miscommunication with her current attorney and that she "simply [didn't] feel comfortable" with her.

On January 7, 2021, the court conducted the termination hearing via Zoom. K.C. Oliver, the DHS caseworker throughout the case, testified that Jennings had been in and out of jail a couple of times throughout the course of the case and that Jennings lacked stability. Oliver testified that she was concerned with Jennings's romantic involvement with a man named Louis Csak. She testified that Jennings missed several drug screens and did not consistently submit to them until June 2020. Oliver testified that while Jennings completed drug treatment, she tested positive for meth after she got out of rehab and then she went to jail for parole violations. She testified that Jennings did not complete parenting classes until the final hour; she completed an hour of parenting classes on October 20, 2020—two days before the first scheduled termination hearing. Oliver testified that Jennings did not get her own place to live until December 2020. Oliver did not believe that L.J. was bonded with

Jennings or that Jennings had the ability to protect L.J. and keep her safe from harm. Oliver testified that she was concerned because Jennings did not do anything for the first nine months of the case, and it took her going to jail and being threatened with prison in order for her to make positive progress.

Next, Jennings testified. She said that she lives in an apartment that she has had since December 2020 and that she is not in any romantic relationships. She testified that she last had contact with Csak in October 2020. She said that the last time she used illegal drugs was May 6, 2020. She explained that it is her personal choice to stay clean and not because she faces time in prison. She testified that she has worked at Goodwill since August 24, 2020. Jennings acknowledged that S.J. and A.M. had been in foster care after S.J. tested positive at birth for illegal drugs but testified that she had followed the case plan, and the children had returned to her custody. Jennings testified that she wanted L.J. back in her custody but thought a transition period would be best.

Chris Ramey, Jennings's parole officer from June 2019 until she started drug court in June 2020, testified that Jennings had just been released from parole prior to the traffic stop that initiated this case. He explained that she was on a GPS monitoring system, and shortly after being released, she was back to doing drugs.

Rachel Jarchow testified that Jennings is her client in drug court and that she has about eight more months to complete the requirements of drug court. She testified that Jennings has done "phenomenal" and that she believes Jennings can overcome her past because she has now surrounded herself with a great support system.

Tim McLaughlin, who is also working with Jennings through drug court, testified to her progress in the program and how she stands out for working the program so well. He said that she is on track to do well and maintain sobriety.

Egypt Tramble, Jennings's current probation officer, testified that she has been doing great and that she has not had any positive drug tests since she started submitting to them in June. She testified that Jennings is maintaining her financial obligations, is prompt, and communicates well; and Tramble has not had any issues with her.

Marty Hausam, the reentry program manager for Goodwill Industries of Arkansas, testified that Jennings applied for the Transitional Employment Opportunity program in August 2020. He explained that it is a sixteen-week paid training program that clients apply for, and they are assigned case managers to work with them on life skills and employment skills. He testified that Jennings has a good work ethic and has made great progress in the program.

Kathleen Housely, a licensed professional counselor, testified that she worked with Jennings in 2007—the first time DHS was involved with her family. Housely testified that she has most recently worked with Jennings since March 2020. Housely spoke to her progress and that Jennings is utilizing community resources. She testified that Jennings is sincere in her efforts and has been sober since May 2020.

Jennifer Peterson, the CASA volunteer on this case, testified that over the past sixteen months, Peterson had contact with Jennings only twice despite trying to meet with her several times. Peterson testified that L.J. is experiencing stability and that it has brought about a remarkable, positive change.

Last, the current foster mom testified that L.J. is doing great in her care and that she would be a permanent-placement option if the court terminated Jennings's rights.

On February 5, 2021, the court entered an order terminating Jennings's parental rights finding that all three grounds pleaded in the petition supported termination. The court further found it was in L.J.'s best interest to terminate Jennings's rights. Specifically, the court found that L.J. is adoptable and that her foster parents wish to adopt her. The court also found that the potential harm to the health and safety of L.J. would be too great if she were returned to Jennings's custody. It specifically found,

> The mother testified at the permanency planning hearing that she recently began participating in services through drug court and is doing very well. However, the Department offered many of the same services to help the mother address her substance abuse issues, nonetheless, the mother chose to wait until her freedom was at stake before even attempting to address her substance abuse issues.

This appeal followed.

We review termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Guerrero v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 160, at 5, 595 S.W.3d 437, 441. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Kelley v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 355, at 2, 635 S.W.3d 318, 320.

A court may order termination of parental rights if it finds clear and convincing evidence to support one or more statutory grounds listed in the Juvenile Code, Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2021), and that termination is in the best interest of the

6

child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A).

On appeal, Jennings first challenges the sufficiency of the evidence supporting the three statutory grounds found by the circuit court. The "subsequent factors" section of the termination statute provides as follows:

> That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*. Accordingly, DHS was required to prove (1) other factors arose subsequent to filing the original dependency-neglect petition; (2) the parent was offered appropriate family services; and (3) the parent manifested incapacity or indifference to remedying the subsequent issues. *Jackson v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 350, at 7, 635 S.W.3d 336, 340.

The court found multiple subsequent factors as grounds for termination: failure to demonstrate sobriety, instability in housing and employment, multiple arrests, and the fact that Jennings is currently on probation and parole.

Jennings argues that the evidence does not support a finding that she continued to use drugs because she had been clean for eight months prior to the termination hearing and that while her arrests occurred after the initial filing of the petition, they did not pose a health and safety risk to L.J. We disagree.

7

Jennings essentially asks us to reweigh the evidence in a manner more favorable to her, which we are not permitted to do. *Morris v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 411, at 8, 586 S.W.3d 203, 207. Here, the circuit court was presented with sufficient proof that this ground was satisfied. After L.J. was removed from Jennings's custody, Jennings was ordered to comply with the case plan and court orders, maintain stable housing and employment, resolve all criminal charges, and demonstrate the ability to protect L.J. and keep her safe from harm. Despite services offered, Jennings continued to exercise poor judgment. During the pendency of the case, Jennings admitted she used drugs eight months into the case and was arrested twice and incurred additional criminal charges. It was not until she was threatened with prison time that she began making progress. While she had made recent progress, she was not in full compliance with the case plan on either of the previously scheduled termination–hearing dates. We have held that a parent's lack of compliance with the case plan and court orders, including testing positive for drugs, supports termination of parental rights under the "subsequent factors" ground. *Redden v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 539, at 9, 589 S.W.3d 401, 407. Additionally, at the time of the termination hearing, Jennings had eight months remaining to complete the requirements of drug court, and if she did not complete the program, she would have to go to prison— further delaying permanency for L.J.

On this record, we hold that the circuit court's finding that DHS proved the "subsequent factors" ground by clear and convincing evidence was not clearly erroneous. Because proof of only one statutory ground is necessary to terminate parental rights, we need not discuss the other grounds.

As to the best-interest finding, Jennings does not contest that L.J. is adoptable. Instead, Jennings argues there is no evidence that anything in her current situation would make her unable to safely parent. She argues that she had remedied the cause of removal and that she had at least seven months of full compliance by the time of the termination hearing.

In considering potential harm caused by returning the child to the parent, the circuit court is not required to find that actual harm would result or affirmatively identify a potential harm. *Perry v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 193, at 10, 625 S.W.3d 374, 380–81. Potential-harm evidence must be viewed in a forward-looking manner and considered in broad terms. *Id.* A parent's past behavior is often a good indicator of future behavior. *Id.*

As explained above, Jennings did not have a significant length of full compliance with the case plan. Jennings was living in her current home for only a month prior to the final termination hearing. She had been employed for only a couple months, and she had only recently completed parenting classes. We have consistently held that eleventh-hour compliance does not have to be credited by the circuit court and does not outweigh prior noncompliance. *See Miller v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 280, at 19, 626 S.W.3d 136, 146. Finally, Jennings's parole officer testified that she was not compliant with her past parole, and despite her involvement with DHS in 2007, she again exercised bad judgment. Given this history, it was reasonable for the circuit court to question Jennings's assertion that she had finally resolved her drug-addiction issues.

On appeal, Jennings also notes that L.J. had been moved from her previous foster home due to neglect and that she had only been in her current placement for a couple months. She asserts that it would be, at a minimum, ten months before any adoption could

be finalized and permanency achieved. Jennings argues she has only eight months left in the drug-court program, which could be time spent working toward reunification rather than taking the drastic action of termination. This argument misses the mark. The Juvenile Code requires the court to evaluate the potential harm a juvenile would face if returned to the parent. *See Belt v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 315, at 9, 603 S.W.3d 203, 209. Here, despite DHS's long involvement, Jennings has only very recently demonstrated some stability. As the circuit court notes, "[Jennings] chose to wait until her freedom was at stake before even attempting to address her substance abuse issues."

Jennings contends that several cases bolster her argument that the circuit court's best-interest finding was not supported by the evidence: *Rhine v. Arkansas Department of Human Services*, 2011 Ark. App. 649, 386 S.W.3d 577; *Cranford v. Arkansas Department of Human Services*, 2011 Ark. App. 211, 378 S.W.3d 851; *Guthrey v. Arkansas Department of Human Services*, 2017 Ark. App. 19, 510 S.W.3d 793; and *Kight v. Arkansas Department of Human Services*, 87 Ark. App. 230, 189 S.W.3d 498 (2004). She relies on these cases to assert that our court has reversed termination orders where the parent had a few lapses in judgment late in the case and that we should do the same here. However, these cases are distinguishable.

In *Rhine*, the parent had only two isolated incidents of noncompliance that were classified as "slight lapses in judgment." There, the circuit court found that the child and parent had bonded, and the case had progressed to a point where the parent was permitted unsupervised overnight visits. In *Kight*, testimony established that the child was stable and doing well in Kight's care despite her drug use, and as soon as the child was removed from the home, Kight was serious about getting the child back. Additionally, Kight had a single

10

isolated incident of drug use and completed a second round of inpatient treatment. In *Guthrey*, the case had reached a point to allow visitation, there was evidence that the children were bonded with the parent, and the caseworker testified that the children were ready to go home. In *Cranford*, this court reversed the termination order holding that, under the specific facts of the case, termination would not necessarily provide greater stability in the child's life because the child was in the custody of his grandparents, who would continue to care for him and presumably be just as willing to adopt him at some future time should reunification efforts ultimately fail.

By directing us to these cases, Jennings asks us to reweigh the evidence. Unlike these cases, testimony established that L.J. is not bonded with Jennings, and L.J.'s need for stability has not been met. As explained above, the circuit court's findings are supported by the record.

Having reviewed the evidence presented, and considering L.J.'s need for permanency, there is no clear error in the circuit court's finding of potential harm. We therefore affirm the termination of Jennings's parental rights.

Affirmed.

BARRETT and VAUGHT, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Janet Lawrence*, attorney ad litem for minor child.

11